UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH M. MARCUM, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KEN SALAZAR, SECRETARY, <br> United States Secretary of the Interior, <br> et al., <br><br> Defendants. | Civil Action No. 09-1912 (RCL) |

## MEMORANDUM AND ORDER

Plaintiffs Ralph M. Marcum, Walt Maximuck, Earl L. Slusser, Dean Mori, and Conservation Force bring this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 et al., seeking judicial review of the denial of plaintiffs' elephant trophy import applications. Before the Court is plaintiffs' Second Motion to Compel Supplementation of Administrative Record [26]. Upon consideration of the motion, the opposition, the reply thereto, the applicable law, and the entire record herein, the Court will deny plaintiffs' motion as to all unresolved items. The Court's reasoning is set forth below.

### I. INTRODUCTION

The Endangered Species Act ("ESA") lists the African elephant as an endangered species. *See* 50 C.F.R. § 17.11(h). As is relevant to this case, African elephant populations in Zambia are included in Appendix I of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). The ESA and CITES allow the importation of

1

sport-hunted African elephant trophies into the United States only if certain conditions are met. These conditions include that a "determination is made that the killing of the animal whose trophy is intended for import would enhance survival of the species," 50 C.F.R. § 17.40(e)(iii)(C), and that the import is for purposes that would not be detrimental to the survival of the species, *id.* § 23.61.

Plaintiffs Ralph M. Marcum, Walt Maximuck, Earl L. Slusser, and Dean Mori each killed at least one elephant in Zambia for sport. Pls.' Amend. Compl. ¶¶ 7–11. Each of these plaintiffs applied to defendant, the United States Fish & Wildlife Service ("the Service"), for a permit to import his trophy into the United States. *Id.* The Service denied plaintiffs' permits on March 10, 2010. *Id.* at ¶ 5. Plaintiffs challenge these denials.

On June 30, 2010, this Court denied [19] plaintiffs' first motion to compel [13] without prejudice until the Service supplemented the administrative record in response to plaintiffs' amended complaint. On September 10, 2010, plaintiffs filed their second motion to compel supplementation of the administrative record [16]. Plaintiffs seek to add two categories of documents to the record, asserting that these documents were part of the Service's record when it denied plaintiffs' applications. Alternatively, if the Court finds that the documents were not part of the Service's record, plaintiffs request that they be included as extra-record evidence. The Service contends that it did not consider the first category of documents (Items 1–5) in deciding whether to grant plaintiffs' permit applications. The Service further argues that the documents do not fall into any exception for extra-record review. As to the second category of documents, only three items (Items 9, 10, 12) remain in issue. The Service contends that these documents either are already in the administrative record or were not relevant to the permit decisions at issue.

II. **STANDARD OF REVIEW**

As the ESA does not specify a standard of review, the APA governs judicial review of decisions made under the ESA. *Gerber v. Norton*, 294 F.3d 173, 178 & n.4 (D.C. Cir. 2002) (citing *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982)). A court's review of agency action is generally confined to the administrative record that was before the agency when it made its decision. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973). There are exceptional circumstances in which supplementation of the administrative record is appropriate due to some deficiency. *Motor & Equipment Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1105 n.18 (D.C. Cir. 1979). Likewise, it is an extraordinary case when a court considers extra-record evidence in reviewing agency action.

### *A. Supplementing the Record*

Judicial review of agency action under the APA is generally confined to the administrative record. *See* 5 U.S.C. § 706. The record is comprised of those documents that were before the administrative decisionmaker. *Citizens to Preserve Overton Park*, 401 U.S. at 420; *see also* Fed. R. App. P. 16(a) ("The record consists of the order involved, any findings or reports on which that order is based, and the pleadings, evidence, and other parts of the proceedings before the agency."). A court should consider neither more nor less than what was before the agency at the time it made its decision. *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). It is the agency's responsibility to compile for the court all information it considered either directly or indirectly. *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (Lamberth, J.). The agency is entitled to a strong presumption of regularity in having done so. *Cape Hatteras Access Pres. Alliance v. U.S. Dept. of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C.

2009) (Lamberth, J.); *Sara Lee Corp. v. American Bakers Ass'n.*, 252 F.R.D. 31, 33 (D.D.C. 2008).

As this Court has noted, "A court that orders an administrative agency to supplement the record of its decision is a rare bird." *Cape Hatteras*, 667 F. Supp. 2d at 112. To overcome the strong presumption of regularity to which an agency is entitled, a plaintiff must put forth concrete evidence that the documents it seeks to "add" to the record were actually before the decisionmakers. *Sara Lee Corp*, 252 F.R.D. at 34. If an agency did not include materials that were part of its record, whether by design or accident, then supplementation is appropriate. *See, e.g., Natural Res. Def. Council v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). A plaintiff cannot merely assert, however, that materials were relevant or were before an agency when it made its decision. *Sara Lee Corp.*, 252 F.R.D. at 34; *Pac. Shores Subdivision Cal. Water Dist. V. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2005) ("Pacific Shores cannot meet its burden simply by asserting that the documents are relevant, were before or in front of the Corps at the time it made its decision, and were inadequately considered."). Instead, the plaintiff "must identify reasonable, *non-speculative grounds* for its belief that the documents were *considered* by the agency and not included in the record." *Pac. Shores*, 448 F. Supp. 2d at 6 (emphasis added) (citing *Novartis Pharms. Corp. v. Shalala*, No. 99-323, 2000 WL 1769589, at *1, *4 (D.D.C. Nov. 27, 2000)).

### B. Extra-Record Evidence

When reviewing an agency decision, a court will go beyond the agency's record only in exceptional cases. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). As this Court has explained, the exceptions permitting extra-record review are limited. *Cape Hatteras*, 667 F. Supp. 2d at 115. Plaintiffs cite *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir.

1989), in which the Court of Appeals identified eight such exceptions. The Service disputes the extent to which these exceptions apply in this case.

*Esch* involved a challenge to the procedural validity of the Secretary of Agriculture's denial of subsidy payments. *Id.* at 984. The Court of Appeals noted that the rule that review of agency action is normally confined to the record "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." *Id.* at 991. In *Esch*, however, the procedural validity of the Secretary's actions "remain[ed] in serious question." *Id.* While not foreclosing the use of extra-record evidence in reviewing substantive decisions, the Court explained that "[p]articularly in the [procedural] context, it may sometimes be appropriate to resort to extra-record information to *enable judicial review to become effective.*" *Id.* (emphasis added). The Court then enumerated "exceptions countenancing use of extra-record evidence *to that end.*" *Id.* (emphasis added).

Thus, the *Esch* exceptions are more appropriately applied in actions contesting the procedural validity of agency decisions. *See Cape Hatteras*, 667 F. Supp. 2d at 115. But even in such cases, the *Esch* exceptions are "to be sparingly applied to only those cases where extra-record evidence was necessary to make judicial review effective." *Id.*; *see Calloway v. Harvey*, 590 F.Supp.2d 29, 38 (D.D.C. 2008). Indeed, the Court of Appeals recently stated that "[t]he APA limits judicial review to the administrative record 'except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Theodore Roosevelt Conservation P'ship v. Salazar*, Nos. 09-5162, 09-5193, 2010 WL 2869778 at *13 (D.C. Cir. July 23, 2010) (quoting *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)).

### III. <u>DISCUSSION</u>

*A. Items 1–5*

### 1. Supplementation of the record with the materials requested in Items 1–5 is not appropriate.

The first category of documents that plaintiffs seek to add to the record (Items 1–5) consists of court filings and materials related to a case previously before this Court, *Safari Club International v. Babbitt*, No. 91-2523, 1994 U.S. Dist. LEXIS 18183 (D.D.C. Dec. 14, 1994). In that case, Safari Club International ("SCI") challenged the Service's internal guidelines regarding elephant trophy imports. *Id.* at *5. Several of SCI's claims arose from the fact that the guidelines had not undergone public notice and comment. *Id.* After the Service submitted the guidelines to the Federal Register for public comment, the Court dismissed those claims as moot. *Id.* at *12.

In *Safari Club*, the Service represented to the Court that it would not use its guidelines to deny permit applications pending notice and comment. *Id.* at *31. Based on this representation, the Court denied SCI's motion for a preliminary injunction. *Id.* The Service subsequently denied three permit applications for elephants taken in Ethiopia. *Id.* at *32. In light of the Service's prior representation, the Court found it improper that the Service had denied the permits without advance notice to the Court and to SCI. *Id.* Accordingly, the Court sanctioned the Service's conduct and ordered that it "not use the Guidelines to deny permit applications, until final Guidelines are adopted" and "not deny any permit application without prior notice to this Court and plaintiff, pending further order of this court." *Id.* at *33.

The Service ultimately withdrew the guidelines, and the parties stipulated to the dismissal of SCI's complaint. Stipulation, *Safari Club*, No. 91-2523 (Mar. 31, 1995). The Service stipulated that the "guidelines in dispute are no longer in use or to be used and their proposed

adoption have been withdrawn." Order of Dismissal, *Safari Club*, No. 91-2523 (Mar. 31, 1995). The Service further stipulated that "no permits from other nations are outstanding except for three from Ethiopia . . . that are being reconsidered for issuance in accordance with the letter and intent of the amendment to Resolution 2.11(c) of CITES." *Id.* On the basis of these stipulations, the Court dismissed SCI's complaint and ordered that the Service "no longer [] use the elephant trophy import guidelines that have been in issue." *Id.*

Plaintiffs in the present case seek inclusion of the *Safari Club* materials in the administrative record. They argue that these materials were before the Service and that the Service considered them, at least indirectly, when it made its permit decisions. Specifically, plaintiffs contend that the Service was obliged to consider the Court's order in *Safari Club* because it prohibits the Service from using its withdrawn guidelines. Pls.' Mot at 14 [26]. Plaintiffs further argue that they referenced *Safari Club* throughout the permitting process and that it is mentioned repeatedly in the administrative record. *Id.* at 2, 4.

The Service argues that it did not consider the *Safari Club* materials in deciding whether to grant plaintiffs' permits. In support of its argument, the Service has provided the sworn declaration of Timothy J. Van Norman, Chief of the Branch of Permits. Mr. Van Norman was "the initial decisionmaker on the import permit applications at issue." Van Norman Decl. ¶ 2 [27-1]. He states that the Service neither directly nor indirectly considered any of the *Safari Club* materials identified by plaintiffs. *Id.* at ¶¶ 4–10. Specifically, he declares that the Service "did not consult or rely upon the withdrawn guidelines" at issue in *Safari Club* when making the permit decisions in the present case. *Id.* at ¶ 7. The Service further argues that plaintiffs provide no evidence that *Safari Club* is mentioned in the record. Defs.' Opp'n at 11 [27].

The Court does not find supplementation of the record appropriate. Plaintiffs have not provided the concrete evidence necessary to overcome the strong presumption of regularity owed to the Service. Plaintiffs cannot merely assert that the *Safari Club* materials were relevant or were before the Service when it made its decisions. *See Sara Lee Corp.*, 252 F.R.D. at 34; *Pac. Shores*, 448 F. Supp. 2d at 6. Indeed, neither the materials' purported relevance nor plaintiffs' references to *Safari Club* during the permitting process constitute concrete evidence that the Service considered the materials, either directly or indirectly.

Further, as courts in this District have held, references to documents in the administrative record do not prove that that the documents were "before" the deciding agency. *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 6 (D.D.C. 2009) (finding that the mere mention of a document in the record does not "indicate consideration of [its] contents"); *Cape Hatteras*, 667 F. Supp. 2d at 114 (finding that references to a biological opinion in the record do "not prove that it was before the agency when it made its decision"). Plaintiffs thus cannot merely argue that *Safari Club* is mentioned in the record. Rather, they must offer non-speculative grounds for their belief that the Service actually considered the *Safari Club* materials. *See Pac. Shores*, 448 F. Supp. 2d at 6.

The evidence shows that the Service withdrew the *Safari Club* guidelines fifteen years ago and has not used them since. *Withdrawal of Proposed Guidelines on African Elephant Sport-hunted Trophy Permits*, 60 Fed. Reg. 12969 (Mar. 9, 1995); Van Normal Decl. ¶ 7 [27-1]. Plaintiffs' evidence does not overcome the strong presumption that the Service properly designated its administrative record. *See Pac. Shores*, 448 F. Supp. 2d at 6 ("It is the Corps that did the 'considering,' not Pacific Shores. Because Pacific Shores is unable to show by clear

evidence that the Corps' certified record is incomplete . . . the Corps is entitled to the presumption that it properly designated the record.").

### 2. Items 1–5 do not fall into any exceptions for extra-record review.

Alternatively, plaintiffs argue that the *Safari Club* materials fall into several *Esch* exceptions for extra-record review. Specifically, they assert that the Service failed to consider factors relevant to its final decision (exception 2); that the Service considered evidence that it failed to include in the record (exception 3); that the case is so complex that the Court needs more evidence to enable it to understand the issues clearly (exception 4); that the Service is being sued for failure to take action (exception 6); and that relief is at issue (exception 8).

The Service cites this Court's opinion in *Cape Hatteras* to argue that the *Esch* exceptions are narrower than plaintiffs suggest. The Court notes, however, that the exceptions are arguably applicable in light of plaintiffs' procedural claims. *See* Pls.' Amend. Compl. ¶ 101. Nevertheless, the Service correctly asserts that a court should consider extra-record materials only when there is a "'strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Theodore Roosevelt Conservation P'ship*, 2010 WL 2869778 at *13 (quoting *Commercial Drapery Contractors*, 133 F.3d at 7).

The Court finds plaintiffs' invocation of the *Esch* exceptions unpersuasive. Exception 3 does not apply because, as the Court concluded above, plaintiffs have offered no concrete evidence that the Service considered the *Safari Club* materials and failed to include them in the record. As to exception 4—which plaintiffs suggest is "perhaps" applicable—the Court does not find this case is so complex that resort to extra-record evidence is warranted. With regard to exception 6, the Service has denied all permit applications at issue and thus has not failed to take

action in this case. *See* Pls.' Amend. Compl. ¶ 5 [20]. Exception 8 is inapplicable because the form of relief is not in issue here.[1]

In raising exception 2, plaintiffs argue that the Service failed to consider the *Safari Club* Stipulation of Dismissal when making the permitting decisions at issue. Pls.' Mot. at 4 [26]. Specifically, they allege that the Division of Scientific Authority ("DSA"), which makes the non-detriment findings upon which permit decisions are based, used criteria similar to the withdrawn *Safari Club* guidelines. Pls.' Reply at 4 [29].

Plaintiffs mischaracterize the relevance of *Safari Club* to the present case. First, the Stipulation of Dismissal was between the Service and the plaintiffs in *Safari Club*. The Service was not obliged to consider the stipulation in the present case, which involves different plaintiffs challenging different permit denials. Second, in dismissing SCI's complaint, the Court imposed no obligations beyond its order that the Service refrain from using the guidelines at issue.[2] *See* Order of Dismissal, *Safari Club*, No. 91-2523 (Mar. 31, 1995). As noted, the Service withdrew those guidelines fifteen years ago. 60 Fed. Reg. 12969. Plaintiffs have offered no concrete evidence that the Service considered the withdrawn guidelines in this case. Thus, the Order of Dismissal was not a relevant factor that the Service "failed to consider."

Finally, plaintiffs suggest that the requested materials are critical to their ability to prove that the Service has re-adopted its defunct guidelines. But plaintiffs' allegations are not grounds for the Court to consider extra-record materials. As noted above, the Service did not act disingenuously by not considering the *Safari Club* materials. Further, the Court is confident that the *Safari Club* materials are not necessary for effective review of the permit decisions in this

---

[1] When reviewing agency action, the proper remedy is for a court to vacate the challenged action and remand to the agency for further proceedings consistent with its opinion. *Florida Power & Light Co.*, 470 U.S. at 744. Plaintiffs have not indicated why such a remedy would be improper in this case.

[2] The Court's order regarding the outstanding Ethiopian permits has no relevance here.

10

case. Thus, there has been no strong showing of bad faith or improper behavior, nor is the record so bare that it frustrates judicial review. *See Theodore Roosevelt Conservation P'ship*, 2010 WL 2869778 at *13.

## B. *Items 9, 10, and 12*

As to plaintiffs' second category of documents, the only items that remain in issue are Items 9, 10, and 12. The Court will address each item in turn.

### 1. Item 9

In Item 9, plaintiffs request the inclusion of letters acknowledging the Service's receipt of plaintiffs' permit applications and advising them of the expected delay in processing. Pls.' Mot. at 3 [26]. Mr. Van Norman states in his declaration that all acknowledgment letters contain boilerplate language and provide a general indication of the time necessary to process an application. Van Norman Decl. ¶ 14 [27-1]. He further states that, as a matter of office practice, the Service does "not consider acknowledgement letters to be part of the administrative records of permit applications and do[es] not maintain copies of acknowledgment letters in [its] permit application files." *Id.* According to Mr. Van Norman, the Service did not consider the letters in making the permit decisions at issue. *Id.*

The Court does not find supplementation of the record appropriate. Though the Service sent plaintiffs the acknowledgement letters, there is no evidence that the Service considered the letters in its decisionmaking. *See Pac. Shores*, 448 F. Supp. 2d at 6. Plaintiffs therefore have not overcome the strong presumption of regularity to which the Service is entitled in compiling its record. Moreover, the Court does not find that the letters' inclusion is warranted by any exception for extra-record review. Accordingly, the Court will deny plaintiffs' request in Item 9.

### 2. Item 10

11

In Item 10, plaintiffs request the inclusion of their FOIA request for DSA advice regarding Zambia permits, as well as the Service's response to that request. Pls.' Mot. at 3 [26]. The Service states that the FOIA request itself is already in the administrative record at AR 1111. Defs.' Opp'n at 21 [27]. The Service opposes the inclusion of its response, arguing that "a FOIA request is a separate agency action that has nothing to do with the permit decisions at issue in this case." *Id.* Mr. Van Norman states in his declaration that the Service did not consider its response to plaintiffs' FOIA request when making the decisions at issue. Van Norman Decl. ¶ 15 [27-1].

The Court need not address the FOIA request, as it is already in the administrative record. As to the Service's response, the Court does not find supplementation of the record appropriate. Though the Service responded to plaintiffs' request, there is no evidence that the Service then considered its response in making the decisions at issue. Plaintiffs therefore have not overcome the strong presumption of regularity to which the Service is entitled in compiling its record. Moreover, the Court does not find that the response's inclusion is warranted by any exception for extra-record review. Accordingly, the Court will deny plaintiffs' request in Item 10.

### 3. Item 12

In Item 12, plaintiffs request the inclusion of elephant grant applications awarded to Zambia, referenced in an email at AR 706. Pls.' Mot. at 3–4 [26]. Mr. Van Norman states in his declaration that the Service consulted two grant agreements when making its permit decisions, and that both agreements are already in the administrative record. Van Norman Decl. ¶ 16 [27-1]. In their reply, plaintiffs clarify that they seek the grant "applications," rather than the agreements resulting from those applications. Pls.' Reply at 6–7 [29]. Plaintiffs contend that the applications "are expected to demonstrate that Defendants were themselves funding the elephant surveys that the denials mistakenly state don't exist." *Id.* at 7.

The Court notes that the email at AR 706 refers to "copies of any African elephant *grants awarded* to Zambia." AR 706 (emphasis added). The email does not mention the *applications* for those grants. Though the email indicates that the Service considered "grants awarded" to Zambia when making its decisions, it would be speculative to conclude that the Service also considered the grant applications. Plaintiffs therefore have not overcome the strong presumption of regularity to which the Service is entitled in compiling its record. Moreover, the Court does not find that the applications' inclusion is warranted by any exception for extra-record review. Accordingly, the Court will deny plaintiffs' request in Item 12.

## IV. CONCLUSION

For the reasons provided above, it is hereby

ORDERED that plaintiffs' motion as to all unresolved items is DENIED.

**SO ORDERED** this 5th day of November 2010.

ROYCE C. LAMBERTH
Chief Judge
United States District Court

13